STATE of Indiana, Appellant/Respondent,

v.

Michael William DANIELS,
Appellee/Petitioner.

No. 49S00–9411–SD–1079.

Supreme Court of Indiana.

May 16, 1997.

Pamela Carter, Atty. Gen., Meredith J. Mann, Deputy Atty. Gen., Indianapolis, for appellant.

Judith G. Menadue, Elkhart, Mark A. Earnest, Indianapolis, for appellee.

BOEHM, Justice.

The State appeals from a grant of postconviction relief to defendant Michael William Daniels. The postconviction court granted summary judgment in favor of Daniels, vacating his sentences of death and 130 years and imposing a sentence of sixty years. On September 16, 1996, this Court issued an order reversing the postconviction court's grant of summary judgment for Daniels. This opinion sets forth the reasons for the September 16, 1996 order.

### Factual and Procedural History

In August 1979, Daniels was sentenced to death following his conviction by a jury of felony murder, attempted robbery and four counts of robbery. In 1983 we affirmed his convictions on direct appeal. *Daniels v. State,* 453 N.E.2d 160 (Ind.1983). Prior to his trial, Daniels had entered into a guilty plea agreement that the trial court ultimately rejected under the circumstances detailed below. One of the issues raised by Daniels on direct appeal was that the trial court erred in rejecting his plea agreement. This Court held that "it was within the trial court's discretion to reject the plea." *Id.* at 165. On February 6, 1984, Daniels filed his first petition for postconviction relief. The postconviction court's denial of relief was upheld by this Court. *Daniels v. State,* 528 N.E.2d 775 (Ind.1988). However, in *Daniels v. Indiana,* 491 U.S. 902, 109 S.Ct. 3182, 105 L.Ed.2d 691 (1989) the United States Supreme Court granted certiorari and remanded the case to this Court for reconsideration in the light of its then recent decision in *South Carolina v. Gathers,* 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989). On remand, this Court again affirmed the trial court's denial of postconviction relief, concluding that *Gathers* did not apply retroactively in collateral attacks on pre-*Gathers* death penalty proceedings. *Daniels v. State,* 561 N.E.2d 487 (Ind.1990).

Daniels' second petition for postconviction relief was filed on November 22, 1993. As his eighth claim for relief in that petition, Daniels asserted that the trial court committed fundamental error by rejecting Daniels' plea of guilty. In support of his claim, Daniels relied upon the following extremely unusual set of procedural steps. At a pretrial conference on November 8, 1978, Daniels filed a motion to withdraw his former plea of not guilty and enter a plea of guilty. Record at 96–97.[1] *The motion was in a form pre-*

---

1. References to the record on direct appeal are cited as "Record." References to the record on

scribed by the trial judge with blanks filled in, presumably by the parties. That same day, a plea hearing was held during which the trial judge determined the voluntariness of the plea, established a factual basis, and advised Daniels of his rights. Record at 390–450. At the conclusion of the hearing, the trial judge stated, "I'll take the motion to enter a plea of Guilty under advisement, pending your pre-sentence report...." Record at 450. He then set a date for a sentencing hearing. The motion consisted of a two-page document with more than twelve paragraphs of double spaced typewritten matters, including several blanks. A number of handwritten entries adapt the form to the particulars of Daniels' case. The document recites Daniels' desire to withdraw his not guilty plea and advises Daniels of his rights should he plead guilty. This final paragraph, in the same font as the rest of the document but single spaced, appears above the date and signature lines:

> The Court having personally addressed the defendant and having advised him of his rights and having determined that he understands the same and has entered his plea voluntarily and not by reason of any promises, force or threats having been made to him, now accepts the defendant's plea of guilty and orders this Motion and Certificate of Counsel to be made a part of the transcript of the entire proceedings of the guilty plea hearing and sentence herein.

> Entered: _____ _____
> Judge

Handwritten on these lines are "11/8/78" and the judge's signature. Record at 96–97. At the sentencing hearing held a month later, the trial judge again stated that "[t]he plea of guilty was taken under advisement pending determination of certain other matters in-

cluding the ultimate propriety of the plea agreement." Record at 456. The trial judge then rejected Daniels' plea of guilty and set the case for jury trial. Record at 462–69. At that hearing, Daniels raised no objection to the rejection on the ground that the agreement had already been accepted. Rather, he argued that the trial court should, or must, accept the plea because all the proper procedural steps had been followed. It is clear from the record that the parties and the trial judge assumed that no ruling had been made as to the plea agreement. As noted above, on direct appeal this Court held that the rejection was within the trial court's discretion.

In 1994, in his second postconviction proceeding Daniels, for the first time, contended that the trial court was bound by the tendered plea agreement not because it had been properly bargained and the necessary procedure followed, as he had argued before, but because of the trial court's acceptance in 1978. The second postconviction court granted partial summary judgment in favor of Daniels, concluding that by signing Daniels' Plea Motion, the trial judge accepted Daniels' guilty plea and was bound by the plea agreement. The postconviction court found that jeopardy attached upon acceptance of the guilty plea, vacated the death penalty, and imposed concurrent sentences totaling sixty years pursuant to the plea agreement. The State appealed.

## Standard of Review

Indiana Postconviction Rule 1(4)(g) provides that summary disposition in a postconviction proceeding is appropriate when "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."[2] Postconviction pro-

---

appeal from the denial of the first and second postconviction proceedings are cited as "PCR–I Record" and "PCR–II Record," respectively.

**2.** The State properly notes that this Court has on occasion stated that summary disposition of a petition for postconviction relief is a matter of discretion for the trial court and is reviewable only for an abuse of that discretion. *Jordan v. State,* 506 N.E.2d 21, 22 (Ind.1987). In that case, we addressed the standard of review for summary denial of a second petition for postcon-

viction relief pursuant to P–C.R. 1(4)(e), presently P–C.R. 1(4)(f), and determined that the claims asserted were identical to those presented in a prior petition. *See also Robinson v. State,* 493 N.E.2d 765, 767 (Ind.1986) (trial court has the discretion to summarily deny a second postconviction petition if it raises the same issues as the first petition). The case does not deal with the standard for grant or denial of summary judgment as to newly presented issues.

ceedings are civil in nature and the defendant-petitioner has the burden of establishing his grounds for relief. P–C.R. 1(5). Thus, the well-established summary judgment standard of Indiana Trial Rule 56(C) is applicable. Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. T.R. 56(C). The burden is on the moving party to prove each element of its claim by admissible evidence and to establish that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; the opponent may not simply rest on the allegations of the pleadings. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind.1992).

■ In this case, the postconviction court entered specific findings of fact and conclusions of law. Specific findings and conclusions are neither required nor prohibited in the summary judgment context. *Althaus v. Evansville Courier Co.*, 615 N.E.2d 441, 444 (Ind.Ct.App.1993). Although specific findings aid appellate review of a summary judgment ruling, they are not binding on appellate courts. *Id.* The party appealing from the grant of summary judgment must persuade the appellate tribunal that the trial court erred. "[T]he reviewing appellate court faces the same issues that were before the trial court and follows the same process."[3] *Indiana Dept. of State Revenue v. Caylor–Nickel Clinic*, 587 N.E.2d 1311, 1313 (Ind.1992). Any doubts as to fact, or an inference to be drawn therefrom, are to be resolved by the trial court, and will be resolved by this court, in favor of the nonmoving party. *Perry v. Stitzer Buick GMC, Inc.*, 637 N.E.2d 1282, 1286 (Ind.1994).

## I. The Guilty Plea Was Not "Accepted"

■ This case raises the question of what constitutes "acceptance" of a guilty plea within the doctrine of *Reffett v. State*, 571 N.E.2d 1227, 1230 (Ind.1991), which held that "once a plea is accepted, a court is bound by all the terms in the plea agreement...." This holding is the cornerstone of the postconviction court's reasoning in concluding that Daniels entered into a binding agreement in 1978. However, we do not agree that the circumstances of this case support the conclusion that the plea was "accepted."

Daniels argues, and the postconviction court held, that the judge accepted the guilty plea by signing the second page of the Plea Motion. The record before us shows no other entry, and no entry in the order book, with regard to the plea agreement. Specifically, we are directed to no judgment of conviction. The only materials from the court's file in support of Daniels' motion were the plea motion and the transcript of the two hearings in which the court and parties state that the matter was under advisement and ultimately rejected.[4] Nevertheless, the postconviction court agreed with Daniels and concluded as a matter of law that Daniels' plea was accepted because the judge signed the Plea Motion, which included the statement that the court "now accepts Defendant's plea of guilty." PCR–II Record at 748. This record fails to establish that the plea agreement was "accepted" by the judge. It is indisputable that at the conclusion of the guilty plea hearing, the judge stated that he was taking the plea of guilty under advisement pending the presentence investigation

---

3. Daniels argues that we should adopt a clearly erroneous standard of review pursuant to T.R. 52(A). However, T.R. 52(A) applies only to "appeal of claims tried by the court" where a trial court makes findings after an evidentiary proceeding. *See, e.g., Spranger v. State*, 650 N.E.2d 1117 (Ind.1995), *reh'g denied*. Here, we are not presented with such a situation. The postconviction judge merely heard argument by both parties on the summary judgment motion. No witnesses were presented. The State was limited to arguing the evidence designated by Daniels pursuant to T.R. 56(C) because the State had not responded to Daniels' summary judgment motion. As a result, although the postconviction court's summary judgment order is titled "Findings of Fact, Conclusions of Law and Judgment," it is a summary judgment order subject to the standard of review stated above.

4. Daniels also designated affidavits from the judge, his attorneys, and others in support of his motion for summary judgment. None sheds any light on the acceptance issue, except as set forth in this opinion.

report. Record at 450. Daniels contends the judge signed the motion and accepted the guilty plea after this proceeding. We cannot determine the sequence of events from this record, but assume Daniels is correct.[5] However, the record does not reveal any evidence that any alleged acceptance of the guilty plea was communicated to Daniels or to the State either by final order book entry or otherwise. To the contrary, it is clear from the record that all parties assumed no ruling had been made by the judge prior to the December 13th hearing where the judge announced his rejection of the plea.

The materials designated by Daniels in support of his summary judgment motion establish that on November 8, 1978, the court issued an order summarizing that day's proceedings which stated: "Plead of Guilty to Counts 1 thur [sic] 6 as charged under advisement." Record at 95. At the hearing on December 13, 1978, the judge specifically asked defense counsel: "[W]ith respect to whether I should accept the plea, do you have any comment?" Record at 457. Thereafter, the judge stated that he was rejecting Daniels' guilty plea and Daniels objected on the ground that the court did not have the discretion to reject the penalty. Record at 462. He did not object on the basis—or contend in any way—that the guilty plea had previously been accepted. Rather, defense counsel explicitly stated that the judge had taken the plea under advisement. Record at 465.[6] At the end of the hearing, the judge set the case for trial. Some time after that hearing, the court issued an order that stated: "Court now rejects to [sic] guilty plea which was under advisement." Record at 110. This record is internally inconsistent as to what the court intended to do. Indeed it is not determinable whether the trial judge's

signature on the form agreement was before or after the November 8th hearing.

The State contends first that there is a genuine issue of fact material to Daniels' motion, namely the intention of the judge in signing the plea motion. In the postconviction proceeding the trial judge submitted an affidavit to the effect that he recognized his signature on the plea motion, but had no recollection of the circumstances under which he signed it. We do not agree that this fact is material to the disposition of the case. The construction of the court's entries, decisions, and orders presents issues of law, not fact.

■ Courts of this State speak through their order books, not through the judge's unarticulated intentions. *State ex rel. Mammonth Dev. and Constr. Consultants, Inc. v. Superior Court of Marion County,* 265 Ind. 573, 576, 357 N.E.2d 732, 733 (1976); *Epps v. State,* 244 Ind. 515, 525, 192 N.E.2d 459, 464 (1963). Daniels contends that the "Plea Motion speaks for itself." Appellee's Brief at 20. We disagree. Court rulings and orders are those that appear on the court's record and provide "incontestable evidence" of the court's conclusion to grant or deny a motion. *State ex rel. Thompson v. Rhoads,* 224 Ind. 136, 140, 65 N.E.2d 248, 249 (1946). In contrast, notations, conversations and items made without comment to the parties are not actions of the court, even if they may "provide the necessary memoranda from which an official record *nunc pro tunc* might be made." *Id.* Here we find an absence of any attempt to enter a subsequent order clarifying this record. To the contrary, the trial judge explicitly stated he was rejecting the plea. Daniels did not provide the postconviction court with evidence of an order book entry denoting that the trial court had accepted his guilty plea.[7] Nor is there any

---

5. If not, the acceptance was clearly improper because the court had not yet established the necessary procedural and factual foundation to accept a plea. Presumably under that scenario the trial court viewed the single-spaced block as in effect an acknowledgment of service or receipt, but this is pure conjecture. Because we hold the acceptance was incomplete for the reasons set forth in this opinion, the sequence of events is irrelevant.

6. Daniels' attorney submitted an affidavit in support of the postconviction petition stating that he was unaware of the judge's having signed the plea motion.

7. The second postconviction court concluded from the fact that a paragraph 7 in the form plea agreement was crossed out suggested that the court had accepted the guilty plea. That paragraph included a recitation that the court "was not a party to the plea agreement," which reflected the law prior to 1975 amendments. In

evidence that the clerk gave notice of any such order as was required by T.R. 72(D) if such an order existed. The affidavit and conduct of counsel both show no such notice was received. Daniels relied solely upon the Plea Motion, which bears the judge's signature, but is inconsistent with the judge's transcribed statements and the parties' and the court's conduct that all indicate the judge never accepted the plea. As noted above, two of the court's entries specifically stated that the guilty plea was taken under advisement. Not only are we shown no evidence of notice from the clerk, but also IND.CODE § 35–4.1–4–1 (1976)[8] required the trial judge to "enter a judgment of conviction" after accepting a plea of guilty. Daniels has not designated any evidence that a judgment of conviction was entered. Moreover, the parties proceeded to trial without objecting on the grounds that the guilty plea had been accepted by the trial court. In sum, we are directed to no order book entry finding Daniels guilty pursuant to the plea agreement, nor any evidence that acceptance of the plea, if that was what the judge intended to do, was communicated by order or otherwise. We must conclude that the court never "accepted" Daniels guilty plea within the doctrine of Indiana law requiring a plea agreement once accepted to be implemented. Therefore, the postconviction court erred as a matter of law in granting Daniels' partial summary judgment motion.[9]

## II. No Fundamental Error Occurred

 Daniels' contentions based on the plea agreement fail for a second reason. The rules of postconviction relief require all grounds for relief available to a petitioner be raised in the original petition. P–C.R. 1(8). Issues that were or could have been raised on direct appeal are not available for postconviction review. *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind.1993). The purpose of the postconviction relief process is to raise issues not known at the time of the original trial and appeal, or for some reason not available to the defendant at that time. *Sims v. State*, 521 N.E.2d 336, 337 (Ind. 1988). Here, however, we are faced with a claim based on the very same document that was the basis of Daniels' direct appeal. We have no reason to doubt that the trial judge put his name on the plea motion at some point on or about November 8, 1978. It is obvious that the issues on this appeal could have been raised on Daniels' direct appeal and were not. The explanation offered by Daniels is essentially that his counsel on direct appeal and his trial counsel were unaware of the "acceptance" of the agreement. As explained in Part I, the consequences of this lack of awareness is not that the issue is litigable fifteen years later, but rather that no acceptance occurred in the first place. Issues not preserved by objections at trial, nor raised on appeal are generally waived. We are asked to conclude that the failure to raise this point until 1993 is excused by the doctrine of fundamental error. As we have held in prior appeals, Daniels received a trial and was convicted by a jury. Although we find no precedent for this odd turn of events, we cannot say that it was fundamental error to permit a trial to go forward.

8. Now codified at IND.CODE § 35–38–1–1(a) (Supp.1995).

1975 the General Assembly enacted IND.CODE § 35–35–1–2(a)(4), which required the court before accepting a guilty plea to inform the defendant that the court would be bound by its terms if the agreement is accepted. We find nothing in the record that indicates why, or by whom, paragraph 7 was crossed out. Accordingly we, like the second postconviction court, can only surmise, but the most likely inference appears to be simply that the form motion contained an obsolete and erroneous statement of the law that was crossed out before signature by anyone to reflect the changes effected by the 1975 amendment.

9. Because we conclude that the plea was not accepted, we do not need to consider the State's arguments that (1) our 1983 decision (reciting that the trial court rejected the plea) precluded Daniels' acceptance argument under the doctrine of law of the case; (2) the argument was waived by not being raised on direct appeal; and (3) *Steele v. State*, 638 N.E.2d 1338 (Ind.Ct.App. 1994) (acceptance of a plea and finding of conviction necessitated acceptance and enforcement of the plea agreement) was either wrongly decided or should not be applied retroactively in a collateral proceeding. Similarly, because the plea was not accepted, Daniels' contention that he was twice placed in jeopardy—first by the plea agreement and second by the trial—fails because the first jeopardy never occurred.

There are very strong reasons to require objections at trial to preserve error. Important among them is that the trial court can often correct an error if it is called to the court's attention. This can result in enormous savings in time, effort and expense to the parties and the court, including avoiding an appeal and retrial. Moreover, if matters can be heard on appeal despite failure to object at trial, parties detecting such an error may be encouraged to take their chances on the result in the trial court despite the error, secure in the knowledge that a retrial is available. Despite these considerations, the doctrine of fundamental error has been invoked to ensure failure to object where appellate courts have found an error to be sufficiently egregious. As observed in *Nelson v. State*, 274 Ind. 218, 219, 409 N.E.2d 637, 638 (1980), fundamental errors "have been variously described as a failure to meet the requirements of due process of law, *Wilson v. State*, (1943) 222 Ind. 63, 83, 51 N.E.2d 848; gross error which offends our concept of criminal justice, *Young v. State*, (1967) 249 Ind. 286, 289, 231 N.E.2d 797; and the denial of fundamental due process, *Johnson v. State*, (1979) [271] Ind. [145], 390 N.E.2d 1005, *cert. den.*, 444 U.S. 944, 100 S.Ct. 302, 62 L.Ed.2d 312." "Blatant" is a term sometimes used. *Propes v. State*, 550 N.E.2d 755, 759 (Ind.1990). Despite the occasional mention of due process in discussing fundamental error, it is clear that fundamental error is not equated with constitutional error. *Id.* Rather the concept is essentially that the proceedings were so plainly and prejudicially unfair that the appellate court will entertain an issue not raised with the trial court. Here the proceedings do not rise to that standard. It is undeterminable what actually happened to create the record we find today. Viewed most favorably to Daniels, what occurred here was a reversal of course by the trial court, unknown to anyone else. This self correction was to take an action on a point that would have been (and was) held unassailable if the trial court proceeded directly to its ultimate decision. A covert change of mind is not unfair or egregious. It occurs daily, but is rarely documented. The result was a trial and judgment that have been upheld on appeal and in the first postconviction proceeding. There is no effect of the unknown event on the subsequent trial. For the reasons set forth in Part I, there is no reversible error by the trial court. Were there error under these circumstances there is no fundamental error alleged and for that reason the issue is foreclosed at this point.[10]

### Conclusion

As directed by the order of September 16, 1996, this case is remanded to the trial court for review of Daniels' remaining contentions.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.

---

**10.** Daniels also contends failure to raise the issue presented by this appeal deprived him of his constitutional right to effective assistance of counsel. This Court has previously held: "[I]ssues not raised but available to a defendant in his original appeal cannot be considered in subsequent post-conviction proceedings." *Morris v. State*, 466 N.E.2d 13, 14 (Ind.1984) (addressing defendant's claim of ineffective assistance of trial counsel). *See also Sawyer v. State*, 679 N.E.2d 1328 (Ind.1997) handed down today. The Indiana Rules of Procedure for Post-Conviction Remedies require that all grounds for relief available to a petition under the postconviction rules must be raised in the original petition. P-C.R. 1(8). Daniels does not specify whether he is claiming ineffective assistance of trial or appellate counsel. However, the issue of effectiveness of both Daniels' trial and appellate counsel was extensively litigated and appealed in his first postconviction proceeding nine years ago. *Daniels v. State*, 528 N.E.2d 775, 779–81 (Ind.1988). The issues raised by Daniels in this appeal were on the face of the record from the time of his trial. Accordingly, consideration of additional issues bearing on trial or appellate counsel's ineffectiveness that were available at that time is precluded.